The Honorable Court, all rise. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. Today's cases will be called, as previously announced, the times will be as allotted to counsel. The first case today is number 22-1207, United States v. Bernadetto Carvajal. At this time, would Attorney Mesfera please introduce himself on the record to begin. Good morning, Your Honors. Eduardo Mesfera for Mr. Bernadetto Carvajal, the appellant. Judge, with your permission, I would ask for two minutes of rebuttal. Yes, you may. Thank you, Your Honor. Your Honors, the district court erred in disregarding the jury's verdict and imposing a sentence three times greater than the recommended sentencing guideline range and based that on conduct that he was not convicted of and which was not demonstrated by preponderance of the evidence. In this particular case, Mr. Carvajal was convicted solely of possession with intent to distribute fentanyl, a fact that he had agreed to or admitted to during opening statements. It was not a contested issue in the trial. The sole reason for going to trial was to contest the fact that his conduct in the sale of those amounts of narcotics resulted in the death of Mr. Thomas. The jury returned a verdict of not guilty on that charge, convicting Mr. Carvajal only of the offenses to which at opening we had conceded and indicated throughout the trial that he was convicted of. The district court then imposed a sentence. In calculating the sentencing guidelines, the district court declined to grant Mr. Carvajal a two-point reduction for acceptance of responsibility. Mr. Carvajal had pushed that we have properly accepted responsibility for that amount and was entitled to the two-point reduction, perhaps not the third point that the government would grant. Counsel, let me ask you, the offense level that was used to establish the original guidelines range, that offense level was based solely on the weight of the drugs involved, is that correct? It was on the total amount of drugs that was sold by the defendant, not just those sold to Mr. Thomas. So how does that calculation that's based on the weight of the drugs, how does that begin, even begin to account for the terrible consequences of the use of that drug? I mean, the suggestion that I think you're making that that initial calculation already took into account what happened seems to me quite wrong. Why is that weight a fair proxy for what happened here? Because those drugs did not result in the death of Mr. Thomas. That's not what the court found in sentencing. No, the court improperly found that, even though the jury did not find that. Right. The court relied upon one particular individual's testimony, Dr. Bird, an individual who the court refused to conduct a Daubert hearing to see if his opinion was accurate, a person who is an emergency room medical doctor, that is it. He disregarded the opinion of two women who were both medical examiners, one of them the chief medical examiner of Rhode Island, somehow discounted their opinion, saying that the government's medical examiner's opinion did not go far enough. In other words, she wasn't willing to speculate beyond what the evidence showed her, and then simply found that the defense's medical examiner was unhelpful, and then relied on Dr. Bird, saying that his analysis was more really nothing, just analysis. The court can review Dr. Bird's analysis on Record Appendix pages 39 through 41. He doesn't add anything. He doesn't provide more analysis. He doesn't do any independent testing. He looks at the same blood work and says, I think something different. Counsel, may I ask you a question? I think in your brief you conceded that circuit precedent is against you on the acquitted conduct issue. Yes. So is your challenge then really focused on whether the district court's factual finding based on a preponderance of the evidence was clearly erroneous? Is that the heart of your claim here? It's a combination, Your Honor. We do think the law is incorrect, and, yes, I appreciate that acquitted conduct can be used. But there are limits to the way acquitted conduct should be used. So on the first hand, if you use acquitted conduct to drive the entire sentence, that is unconstitutional. And the cases cited talk about that they don't let acquitted conduct become the tail that wags the dog. That's what occurs here. Separate from that, yes, we also indicate to the court that the district court's finding was unreasonable and that his reliance on one doctor's opinion was not justified under the preponderance of the evidence standard. But, counsel, is that really the only evidence that the district court relied on? I think the district court had a variety of evidence in front of it, didn't it, not just expert testimony on that issue? That was the only testimony that demonstrated what caused Mr. Tonks' death. There is no other testimony to show that the fentanyl versus cocaine versus some other combination caused his death. Wasn't there testimony from various agents talking about the language that was used in the text and what that showed about what kind of drug was likely being provided by your client? Yes, and he conceded he provided that drug. So, in other words, there's never an issue that the defendant provided the fentanyl. He did. The question was whether or not the fentanyl caused his death. So the agent's testimony that the defendant was providing fentanyl, he conceded that. He was convicted of that. It was the cocaine mixing with the fentanyl that we indicated to the jury at the time caused his death. It was the cocaine that we demonstrated at trial was provided by a different individual. And that was the purpose of showing that Mr. Carvajal was not responsible for his death. He was certainly responsible for providing all those drugs. That's why we indicated that the sentence was properly calculated when you look at the drug weight that he provided, but the causation piece of it, whether or not the court wants to adopt the but-for causation, which we have encouraged in our brief that the court should adopt and which the First Circuit did not address and hinders them, but even if the court doesn't want to reach that, as it didn't reach it in that other case, there isn't sufficient evidence here. I understand your argument, counsel, but isn't expert, the credibility of expert testimony the kind of thing that is uniquely within the province of the district court to determine credibility issues? It would be, Your Honor. He didn't make a credibility determination. He didn't indicate that the other two experts were incorrect in their opinion or that they were lying or somehow mistaken. His opinion was that one expert provided more analysis, that's all he relied upon, and the other two were less helpful. So that's not a credibility determination. Otherwise, yes, the district court would have that ability to do that. Here it's the weighing of the evidence, where he didn't conduct a Daubert hearing to justify whether or not Dr. Berg was qualified to offer the opinion and then relies on that opinion we would submit to the court improperly. Was there a Daubert challenge? I'm sorry, Your Honor? Was there a Daubert challenge? There was. We filed a Daubert motion prior to the commencement of trial. The court reserved it and then did not engage in a Daubert hearing. And what was the basis? I mean, the person was credentialed. Yes, he is. He's a credentialed emergency room doctor. He's not a credentialed pathologist. He's not a forensic toxicologist, for example, where the court has found in the past forensics toxicologists are helpful. He didn't conduct any of his own independent analysis, review. His report seems to rely on the statements made by the police in the police reports. Again, if you look at those record appendixes 39 through 41, more than any medical analysis of the postmortem blood. We also point out in our brief, as we did at the Daubert hearing, that this court has found that postmortem blood is not a reliable indication of cause of death. So what he was relying upon has been previously found to not be reliable, and he doesn't have the credentials of a forensic pathologist. Counsel, it seems to me the judgment that the judge made here is the kind of judgment that fact finders make all of the time. I don't understand how you can argue that as a legal proposition he was not permitted, having heard the testimony, having heard about the credentials of the doctor. I don't know what precluded him from making the judgment that his testimony was more helpful to him in deciding what the cause of death was. Because the defendant wasn't convicted of the cause of death. So now the court is basically replacing its judgment for the jury. We have a jury trial, and the jury says he's not guilty of that offense, and we punish him specifically for the offense he was acquitted of. It eliminates the defendant's right to a forensic trial. Well, I understand. I mean, that's a controversial issue about whether it's fair to rely on acquitted conduct, but that proposition is so well established that I don't know that you gain much traction by arguing against the legality of the judge making that determination despite the jury finding. That proposition is well established. He could do that. He certainly can take the conduct into account, but it can't be the conduct that drives the sentence. This court had previously found that increasing somebody who had drugs that had caused death was fair to increase the sentence to 60 months. They said that was a reasonable sentence. That was not a sentence where the tail wags the dog. Here he posed a sentence of 120 months, double what this circuit court has previously found was reasonable, based exclusively on conduct that the jury acquitted him of, and we have argued that it was not demonstrated by a preponderance of the evidence. This is not a reasonable sentencing factor. Well, here didn't the increase, wasn't the increase actually less than the guideline sentencing increase would have been had the jury found against him? It was. The guidelines would have required a 20-year mandatory sentence. So the judge did stay within the statutory maximum, but not all sentences that are within the statutory maximum are per se reasonable. This one isn't reasonable. Right, but what we do have is we have the Guidelines Sentencing Commission's judgment as to the seriousness and the implications of causing death that it warrants a very large increase in the GSR. It certainly does, Your Honor. And so when the jury didn't found it, so the GSR didn't change, but under our precedent and precedent elsewhere, the judge is entitled to make factual findings that aren't bound by the jury's more reasonable doubt finding. He certainly is, but he then chose to do a departure. In other words, a departure is supposed to be for things that are not within the guideline range. As Your Honor has properly pointed out, there was a guideline range for this exact type of conduct if proven. So if the jury doesn't find that, it is not appropriate for the judge to then take a departure when the guidelines call for it in certain circumstances and say, well, I'm substituting my judgment, I think it did occur, and now I'm just going to raise the sentence. It sends the impression, which of course the court can see, that even if you go to trial on a charge or are acquitted of that charge, you can still be punished for that conduct. Thank you. I think you've saved two minutes. I have, Your Honors. Thank you so much. Thank you. Thank you, counsel. At this time, if the attorney for the United States will please introduce himself on the record to begin. Your Honors, may I please the court, Randall Crum on behalf of the government. Starting with the issue of what appears to be the central argument here, which is the district court clearly erred in crediting the testimony of Dr. Bird and other evidence in the record to find that there was, that the death had resulted. I think this court has indicated there's great discretion in the district court in deciding who to credit in evaluating this kind of testimony and making this kind of determination, and the district court was on firm ground in concluding that Dr. Bird provided the most useful and helpful analysis. The suggestion has been made that he did not, in fact, make credibility finding and that that somehow is significant. The district court was clear that it was relying on the testimony of Dr. Bird particularly, and it found the testimony of the other experts less helpful, and Dr. Bird was certainly qualified to make the conclusions that he did. He's an ER doctor and toxicologist who said he treated 800 to 1,000 patients with overdoses, and he had relevant testimony to give. But what, it does seem on its face he was less qualified than medical examiners when it came to opining as the cause of death. Well, I think what was clear is that the, at least from the medical examiner that was testified here, is somewhat of a different question before them. The medical examiner was making a determination, Massachusetts medical examiner, of cause of death for purposes of ruling out foul play or other kinds of causes of death and determining that it was a combination of drugs that had killed Ricky Tonks. The medical examiner did not suggest that it was important to her decision to pick out particularly which drug had caused the death, that it was satisfactory for her purposes to find that both did, and she didn't need to make a further finding. So with respect to the particular legal issue here, which is what is the but-for cause of the death, the indication was that it simply wasn't a question she needed to answer in her role as medical examiner. She needed to rule out other causes of death that might show the need for other types of investigations, and that it was satisfactory to her that it was caused by both, and she didn't go further. So I don't think that it necessarily was a difference in qualification, but a difference in focus of the inquiry in a sense here, and certainly Dr. Byrd was qualified with respect to the particular focus he had, which was determining whether fentanyl alone could have caused the death. He certainly relied on both facts of this case, including the speed with which Tonks apparently died, with the needle still in or near his arm, as well as the particular effects of fentanyl and the levels in the blood to find that that had been the particular cause here. Counsel, is this a case where the acquitted conduct is the tail that wags the dog? It isn't, and I think this court has said that Lombard is an unusual and perhaps unique case in finding that that had happened, and it was a very unique set of circumstances where a combination of the particular guidelines at issue and the lack of mandatory guidelines and the lack of statutory maximum meant the person convicted of a gun crime was essentially sentenced as a murderer and to a mandatory life sentence. The court has never followed that case in any other case, and it's repeatedly distinguished it in cases in which, like this case, there is a statutory maximum and the person is sentenced within the statutory maximum for the crime of conviction. In fact, Sandoval is very similar, although involved a different factual circumstance. There was a person who was sentenced to half of the statutory guideline for the underlying offense of 20 years. The court found that critical and found that the Lombard issue simply did not arise because it was well within the statutory maximum. That happened here, and again, the extent of the increase was otherwise justified by the impact, the court has noted, of the significant consequence of this particular drug sale, and we cited a number of cases finding similar or even greater. Hindenstrom was four times the otherwise applicable GSR. Counsel, the briefs discuss the difference between a departure and a variance, and the judge himself seems somewhat confused about what he was doing in the sense that most of the discussion in the sentencing hearing seemed to involve a departure analysis, but then in recording the judgment, he says he actually did a variance. I mean, there is a difference between the two. The departure requires consideration of very specific factors that are identified in the guidelines. I mean, the variance is a bit more freewheeling. The judge is not required to consider certain factors in reaching the final sentencing determination. Shouldn't we be concerned that there is that inconsistency in the way that the judge analyzed what he was actually doing? Again, he seemed to be doing a departure analysis, and at the end he said, well, no, it's really a variance. Does anything turn on that? Well, I don't think anything turns on in this case because the essential difference in this case is whether the but-for causation test is required or not, because under Hindenstrom, if a death resulting is considered for purposes of upward variance, you don't need strict but-for causation, but you do if you're going to use the departure language. We point out, and I think the record supports the conclusion of the district court, that there was evidence that supports that conclusion. And if that is so, then there's really no difference between the two for the purposes of this case because the requirements for departure were satisfied, as were the requirements for an upward variance. And we also cite the cases, Hindenstrom is one, applying a variance, but are the departure cases showing similar amounts of increases? So in this case, it's a distinction that really doesn't undermine the conclusion. I would agree, the government would agree, that the court says inconsistent things. I think one reading is the court did, in fact, do what it said in the statement of reasons and imposed a variance because it does frame its discussion within the 3553A factors first and then cites the departure provision. This court in Fletcher suggested that where there has been a little bit of confusion about the basis, we can look at least to that kind of language to suggest that the court would have imposed the same sentence as a variance as a sort of a harmless error argument. But again, in this case, because we believe the departure requirements were plainly satisfied, the court doesn't need to address that particular discrepancy, but we believe it could be interpreted either way. Well, haven't we said on several occasions now that the difference between a departure and a variance is essentially vestigial, post-Booker, and there isn't any departure that couldn't be called a variance and vice versa? It's just a label. That's certainly true, and that's why, particularly in this case, I think because the same result would apply, I think that's absolutely right. The fact that it was presented in this case as a departure and a variance in the briefing and the court chose to refer to the departure language creates perhaps a confusion that didn't need to exist. If the court had simply gone forward with the variance, we wouldn't be asking these questions, but the court did cite it, and that's why we take the trouble of trying to point out that the clear error standard did apply and the requirements of the enhancement did apply. If the but-for causation is really the big difference between a variance and a departure, is there anything in the court's decision or oral statement where it's clear that it found but-for causation? Well, I think this court has said in a number of cases, many cases, that we can infer what the court does at sentencing from what the parties argued and what the court then does. And in this case, there was no disagreement in both the briefing, the memorandum sent to the memorandum by the government and that by the defendant that but-for causation was the applicable standard. And I think absent some indication of contrary, the inference has to be that the judge saw that the parties agreed on this issue and applied the appropriate standard. And certainly we would argue that is especially the case where the testimony would support that standard. And I think that also does provide some additional level of confidence here, is that Dr. Byrd's testimony was clearly aimed at establishing that fentanyl was the but-for cause, that he suggested and discussed other possible alternative causes, including the role of cocaine, but also gastrointestinal issues and other things that had been hinted at by the defense and rejected them as causes. So the nature of the testimony credited by the court was the one that was most aimed at the concept of but-for causation and I guess provides additional confidence that that's the test the court was aiming to. Counsel, this tail-wags-the-dog metaphor from Lombard, it seems to me you're pretty dismissive of Lombard as a continuing precedent. I mean there is a sense in which Lombard is a warning that the enhancement, particularly in a situation where a jury has found that the basis for the enhancement does not mean beyond a reasonable doubt standard, that if then at sentencing the judge treats the facts that the jury found unpersuasive by that standard, uses those very facts here to double the sentence. There's an argument that the defendant is really being sentenced for the enhancement and not for the underlying conviction that the jury did find. Don't we have that situation here? I mean it is striking that the enhancement doubled the sentence that was imposed. Why doesn't that come within the spirit of Lombard, if you will, even though the facts are not as dramatic? Well, I think we're not meant to be dismissive of Lombard, but merely to note that this court has repeatedly distinguished it and has described it in its own terms an unusual, perhaps singular case. That doesn't mean that its spirit doesn't apply or that we're not concerned about the impact, but I would also point out that we have indicated in our briefing a number of cases which have applied significant increases based on particularly these facts, death resulting from drug dealing. Hindstrom was a larger proportional increase. It was four times the maximum, and that was not viewed as a problematic issue. I would also note, and this is something we don't note in our brief, but the guidelines provide in other provisions for increases when death resulting, and we, in preparation for argument, looked into some of those, but in the case of, I think, where it's, let me just, a couple that I saw, where it's for aircraft piracy, I believe it's in 10 years, when it's resulting from alien smuggling, I believe it is 13 years, and I can provide a 28-J letter on this, but it was interesting to us to see that these are the kinds of increases when a death results are substantial, and so the guidelines do kind of contemplate a large role when death results in a large increase would be permissible, and again, I don't know, the court's decisions in Sandoval and others suggest that that doesn't raise a Lombard issue, especially where it's well within the statutory maximum. Thank you, Mr. Cronin. Thank you, Your Honor. Thank you, counsel. At this time, if counsel for the appellant would reintroduce himself on the record to begin, you have a two-minute rebuttal. Good morning again, Your Honors. Bardo Mast from behalf of Mr. Carvajal. To address that exact point that you raised up, Judge Lopez, there has to be some constitutional limit to how much we can increase someone's sentence based exclusively on facts that are not found by the jury. The government gives examples of, as you were trying to at the end, about the sentencing guidelines. The sentencing guidelines takes into account if death results, and they give a specific guideline provision for when death results, and then they give a specific burden that has to be demonstrated, the but-for causation and the conviction. So the sentencing guidelines take this into account. The government attempted to do this, failed at that, and then wins anyway when they then get the judge to do not double the sentence. It is triple the properly calculated guideline sentence or more than double the sentence that the judge calculated. Everyone who sits here today, everyone in this courtroom, understands that Mr. Carvajal was given 10 years in jail because Mr. Tonics died. Everyone knows that. It's not confusing. It's not maybe there's some other issue. It is. He didn't have a significant prior criminal history. There wasn't some other factor that's going on in this case. The drugs weren't particularly strong. They weren't accidentally laced. He wasn't tricked. The court found that it was an unintentional death. So there's no other aggravating factor beyond Mr. Tonics' death. At some point, the court has to tell the government and the courts, you can't take conduct that was not proven beyond a reasonable doubt and make that the issue that drives the sentence. But isn't virtually all of the information that is decision-making that occurs in sentencing actually just by a preponderance standard? There is no reasonable doubt standard at sentencing for a whole array, virtually all the facts found. So I think your proposition is that our court and others have erred in finding that the fact that a jury didn't find beyond a reasonable doubt a fact takes that fact out of play in sentencing. It doesn't take it out of play. Or it diminishes it somehow. That is a position I do take. However, the court doesn't have to take that position to find that the sentence was unreasonable. It only has to find that the fact of the death is what's driving the whole sentence, and that particular fact he was not convicted of. It would be the equivalent of if we convicted him of trespassing and then sentenced him to 10 years for trespassing. We would say, well, that's not right. Well, his trespassing resulted in somebody's death, so he gets 10 years. There's a large disparity there. The Sentencing Guideline Commission, Congress, no one considered that a sentencing judge would take factors that normally incrementally increase sentences to various amounts, depending on a variety of circumstances, and take the one fact that he was acquitted of and have that drive the entire sentence. That's what makes this case unique, as unique as Lombard, because in this case, unlike the others, the defendant pled guilty to possession with intent to distribute, was pled guilty to distributing of drugs, and then they increased his sentence. Here he went to trial and was acquitted of it. Yes, Your Honor. Counsel, again, since you did concede that circuit precedent allows consideration of acquitted conduct, what would be your, so given that, what would be the legal standard that you're proposing for us to determine when acquitted conduct drives the sentence, which is what I think you're arguing now? When it's clear from the record that the sentence is not being increased by some degree of levels, like the guideline would increase, a two- or three- or four-point-level increase, but rather is the entire focus of the sentencing that the court imposes. In other cases where the court has imposed either a 60-month sentence or greater sentences, the court relies on a variety of factors, and every time this court or other courts have upheld it, it's not merely the one fact that wasn't found by the jury, it's the defendant's criminal history, a series of other factors that came into play. I think in one case he had a large state court acquittal that he had been acquitted on various occasions, and the court wanted to make sure that he got the message this time. There's different factors that the court can put into it. It's this case where we see the court relies on one factor that makes it clear that it's inappropriate and needs to be remanded for resentencing. I think my time is up. Yes, it is, but you can get out a sentence or two before you go back. Thank you so much, Your Honor. So I would say to the court that it should be remanded for resentencing. The court can take other factors into account, but cannot have it be the sole factor that drives the sentence, and for those reasons we'd ask the court to grant our petition and remand the case for resentencing. Thank you, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.